UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

DAMON PATTERSON                                              CIVIL ACTION

VERSUS                                                              NO. 12-1674

MICHAEL DANIELS ET AL.                              SECTION "A" (2)

## REPORT AND RECOMMENDATION

Plaintiff, Damon Patterson is a prisoner currently incarcerated in the Jackson Parish Correctional Center in Jonesboro, Louisiana.  He filed this complaint pro se and in forma pauperis pursuant to 42 U.S.C. § 1983 against Orleans Parish Assistant District Attorneys Michael Daniels and Alex Calenda; Orleans Parish District Attorney Leon Cannizarro; Orleans Parish Criminal District Judge Frank Marullo; Orleans Parish Indigent Defenders Jason Ullman and Kendall Green; Orleans Parish Sheriff Marlin Gusman; Orleans Parish Sheriff's Deputies Emanuel Hudson, Sgt. Crump, Sgt. Jefferson and Deputy Flagg; New Orleans police officers Vicente Dave, Lt. Bradley Tollefson and Rafael Dobard; Dr. Hernan Adames and the West Jefferson Medical Center; Dr. Samuel Gore and Nurses Pounds and Stephanie Powers of the Orleans Parish Prison ("OPP") medical department.  Patterson alleges generally that he was falsely arrested, prosecuted and convicted of the charges for which he is currently incarcerated; that he was subjected to excessive force during his arrest; that he received inadequate medical care for injuries suffered in his arrest and during his incarceration in OPP. He seeks monetary damages and injunctive relief.  Record Doc. No. 9 (Complaint at ¶ V).

On November 29, 2012, I conducted a telephone conference in this matter. Participating were plaintiff pro se and Craig Frosch, Churita Hansell and James E. Harper, counsel for defendants. Plaintiff was sworn and testified for all purposes permitted by <u>Spears v. McCotter</u>, 766 F.2d 179 (5th Cir. 1985), and its progeny.

### **THE RECORD**

Plaintiff testified that he is currently incarcerated in the Jackson Parish Correctional Center based upon a conviction for drug violations following an October 4, 2011 arrest by the New Orleans police officers who are defendants in this case.  He testified that he was subsequently convicted on August 15, 2012 on charges of being a convicted felon in possession of a firearm and resisting arrest by force. Patterson confirmed that the drug charges against him are still pending in Orleans Parish.  He said he is serving a 12-year sentence on the charges for which he has already been convicted.

Patterson confirmed that he asserts several kinds of claims in this case, the first of which alleges improper conduct by the police officers, prosecutors, judge and public defenders who are defendants relating to the charges upon which he has been convicted and others that remain pending. Specifically, he stated that his claims against Lt. Bradley Tollefson relate to his convictions and the claims against Officer Dobard relate to both the charges on which Patterson was convicted and the drug charges that remain pending against him.  He said that defendant Jason Ullman was his appointed public defender and Kendall Green was Ullman's supervisor in the public defender's office in connection

with his representation in the criminal cases.  Patterson testified that he has sued Ullman and Green in this case because they "both were doing things without my consent" when they represented him initially in his criminal cases, in which he waived his right to counsel and opted to represent himself.  He complained that Ullman nevertheless "continued to do things" in connection with his cases.  He also alleged that Green said he was going to help the State convict Patterson of the charges against him.

Asked why he had sued defendant Michael Daniels, Patterson replied that Daniels "has a long list of public records [on his] computer against me and false documentation of false convictions that I have." He identified Daniels as the assistant district attorney who prosecuted Patterson in an old case in 1997, but who appeared also in one of Patterson's criminal cases upon which this case is based. He also identified defendant Alex Calenda as an assistant district attorney who was prosecuting Patterson in one of his pending drug cases.  He alleged that Calenda made certain false filings in his pending criminal case.  He confirmed that he has sued the assistant district attorney defendants in this case because of actions they took as part of their prosecution of the charges against him, including "false filings of intentional misrepresentations of police reports and different things dealing with the magistrate docket" in both the case in which he was convicted and in the cases still pending against him.

Asked why he has sued Judge Marullo as a defendant in this matter, Patterson testified that Judge Marullo told an attorney before his probable cause hearing "that he

3

was going to find probable cause no matter what" in a still-pending case charging Patterson with possession of stolen property, specifically a tow truck. He alleged that Judge Marullo "locked me up for taking the stand" by setting a high bond.

Asked whether he had been found not guilty in any of the criminal matters about which he alleges impropriety by these defendants, Patterson stated that a mistrial had been declared in one of his cases, and that in the same case in which he was found guilty of the charges as to which he is currently serving his prison sentence, he had been found not guilty of two other charges concerning drugs.

Patterson confirmed that he also asserts claims in this case that he was subjected to excessive force during his arrest and that he received inadequate medical care for the injuries he suffered while he was incarcerated in OPP.  He stated that when he was arrested on October 4, 2011, he was "tasered."  He confirmed that he had received the medical records I previously ordered defendants to produce and that they are accurate, Record Doc. Nos. 8 and 30, except that they do not include some documentation concerning his OPP medical intake processing and some of his injuries at West Jefferson hospital.

He testified that "I still suffer with my back" from injuries occurring when he was arrested by New Orleans police officers.  He alleged that he suffered a broken ankle, a fractured elbow, torn muscles and other injuries on October 4, 2011 during his arrest on the gun and drug charges he described earlier. He testified that New Orleans Police

Officers Wachs, Wesley Humbles, Jason Hickman, Teresa Morris, Rafael Dobard, Hurds, Hillary Laurent and others injured him during that arrest. He stated that the officers shot him with tasers, beat him with batons, sprayed him with pepper spray and twisted his ankle. Patterson clearly confirmed during his testimony, however, that this was the same incident for which he was subsequently convicted of resisting arrest by force, for which he is currently serving his prison sentence.

Patterson testified that immediately following the incident, he was initially taken to the West Jefferson Medical Center emergency room for treatment of the injuries he suffered in the arrest, including to his back, kidney, ankle, arms and shoulders. He denied the notation in the hospital medical records that he had been smoking crack cocaine and that he was violent in the emergency room.  He complained that none of the medical care providers would obtain and review the medical records he had accumulated before his arrest and while he was released from prison.

Patterson alleged that he has received no treatment for his injuries while incarcerated.  He said he was in OPP from October 4, 2011 to January 3, 2012, when he was released for a short time, before he returned in February 2012 to OPP, where he stayed until his transfer to the Jackson facility on September 20, 2012.  He confirmed that he was in OPP for a total of about nine (9) months.

As to his complaint against Dr. Gore, the OPP medical director, Patterson testified that he filed several complaints with Dr. Gore that he had received no treatment while in

OPP.  He alleged that Dr. Gore instructed him to make sick call requests, but they were ignored. He denied that the had ever been seen at OPP by Dr. DiLeo or Nurse Hogan, though he confirmed that Dr. DiLeo's name appears on his prescription medications as the prescribing physician.  Patterson said that "Nurse Pounds was the one who always seen (sic) me," and he confirmed that he had also been seen at OPP by nurse-practitioners whose names he could not recall, except perhaps for King. "Nurse Pounds was the only one they kept making me see," he said.

Patterson confirmed the notations in his medical records that he received prescription medications while at OPP, including Cliodene (sp) for high blood pressure, Neurontin for "nerve pain" in his back and leg, and antibiotics for an infection related to his broken ankle. He said he continues to have difficulty with his medical treatment at his present place of confinement.

Patterson's verified West Jefferson Medical Center records indicate that he was transported to the hospital emergency room on October 7, 2011 upon his arrest.  He was "very violent" and was "sedated with valium."  An X-ray of his left shoulder and elbow was normal.  While in OPP beginning in October 2011, the records indicate that he was seen on several occasions by OPP Nurses Pounds, King, Gray and Johnson for various complaints.  The records confirm his testimony that he was provided with prescription medications, including antibiotics, Neurontin and Ultram for pain, with Naproxen and an analgesic balm later, in August 2012, and that he was housed in the medical area at

OPP for about six (6) weeks in April - May 2012 in response to his complaints of back, neck and leg pain.  Record Doc. No. 30.

As to his fourth claim concerning harassment and false disciplinary complaints against him, Patterson testified that on May 19, 2012, while Patterson was housed on the OPP medical facility, two OPP deputies, Sgts. Crump and Jefferson, moved him from the OPP medical area to a regular dorm. Patterson said he was being kept in the OPP medical tier at that time because of the medical problems he described above. He stated that he was in the medical tier because he had been given crutches and was then being provided with medications. He said he was on the OPP medical tier for about six (6) weeks, from April 4 to May 19, 2012.

Patterson alleged that the two officers moved him from the medical tier to a regular tier and then returned about a week later to bring him before the disciplinary board, on a "false" charge relating to sexual harassment of another inmate. He said he appeared before the board, but a "bogus" hearing was conducted by Sgts. Crump and Jefferson. He testified, "I filed a grievance in that matter and asked for an appeal . . . hearing to be held. I was granted that through the administrative remedy, the grievance procedure.  They never called me, but they never took no action against it, and Ms. Jefferson and Sgt. Crump from that point on stopped my mail from going out and coming in . . . A lot of mail that you were sending me, I was getting it ten and fifteen days later."

7

Patterson testified that he received no disciplinary punishment as a result of the sexual harassment disciplinary charge, "nothing at all.  They just used it to move me off the medical tier," he said.  He said "nothing physical happened to me," but "paperwork-wise" he was disciplined. Patterson stated that he was found guilty at the hearing, but he was not punished.  He said his complaint is that the disciplinary complaint and the disciplinary hearing were both false, even though he was not punished. He conceded that he received his mail, but he complained that it had been delayed in its delivery to him.

Patterson also testified that OPP Sgt. Hudson worked with Sgt. Jefferson, and that Sgt. Hudson filed a "false drug report on me" on October 9, 2011. He said he was subsequently charged with that drug offense in criminal court, and those charges remain pending.

As to defendant Sheriff Gusman, Patterson alleged that he notified Sheriff Gusman in writing of all of his complaints, but the sheriff ignored him. He therefore alleged that the Sheriff knew everything "that was going on."

As to defendant Deputy Flagg, Patterson identified him as "the one . . . who transported me in a wheelchair from CLU to the tents" and found "a bunch of [drug-related] contraband in the back of the wheelchair" and then put it in a box. He alleged that he was then charged criminally with one of the drug charges that remains pending in state court. As to defendant Vincent Dave, Patterson alleged that Dave was a police officer who made false statements against him during a preliminary hearing before Judge

Marullo in connection with the criminal charge against Patterson concerning unauthorized use of a motor vehicle, which remains pending.

Patterson identified defendant Dr. Hernan Adams Gonzales as a doctor and defendant Stephanie Powers as a nurse, both at West Jefferson Medical Center. Patterson alleged that both Dr. Gonzales and Nurse Powers provided him with inadequate medical care for the injuries suffered in his arrest.

After the Spears hearing, several defendants filed motions to dismiss. They include (1) the motion of defendants Kendall Green and Jason Ullman to dismiss for failure to state a claim, Record Doc. No. 20; (2) the motion of defendants Alex Calenda, Leon Cannizzaro and Michael Daniels to dismiss for failure to state a claim, Record Doc. No. 33; (3) the motion of Vincent Dave, Raphael Dobard and Bradley Tollefson to dismiss for failure to state a claim, Record Doc. No. 45; and (4) the motion of defendants Hernan Adames and Jefferson Hospital District No. 1 (West Jefferson Medical Center) to dismiss for failure to state a claim. Record Doc. No. 47. In addition to his Spears testimony, which I have considered in opposition to the motions, Patterson filed written responses to the motions. Record Doc. Nos. 36, 38, 52 and 57.

Patterson filed a motion about one month after the Spears hearing seeking a preliminary injunction. Record Doc. No. 49.

## ANALYSIS

### I.    STANDARDS OF REVIEW

### (A)    PRISONER COMPLAINT SCREENING

"A federal court may dismiss a claim in forma pauperis 'if satisfied that the action is frivolous or malicious.'"  Moore v. McDonald, 30 F.3d 616, 620 (5th Cir. 1994) (quoting former 28 U.S.C. § 1915(d), now incorporated in 28 U.S.C. § 1915(e), as amended).  A complaint is frivolous "if it lacks an arguable basis in law or fact." Davis v. Scott, 157 F.3d 1003, 1005 (5th Cir. 1998); Reeves v. Collins, 27 F.3d 174, 176 (5th Cir. 1994).  The law "'accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless.'"  Macias v. Raul A. (Unknown), Badge No. 153, 23 F.3d 94, 97 (5th Cir. 1994) (quoting Neitzke v. Williams, 490 U.S. 319, 327 (1989)).

The purpose of a Spears hearing is to dig beneath the conclusional allegations of a pro se complaint, to ascertain exactly what the prisoner alleges occurred and the legal basis of the claims.  Spears, 766 F.2d at 180.  "[T]he Spears procedure affords the plaintiff an opportunity to verbalize his complaints, in a manner of communication more comfortable to many prisoners." Davis, 157 F.3d at 1005. The information elicited at such an evidentiary hearing is in the nature of an amended complaint or a more definite statement under Fed. R. Civ. P. 12(e).  Wilson v. Barrientos, 926 F.2d 480, 481 (5th Cir.

1991); <u>Adams v. Hansen</u>, 906 F.2d 192, 194 (5th Cir. 1990). "Upon development of the actual nature of the complaint, it may also appear that no justiciable basis for a federal claim exists." <u>Spears</u>, 766 F.2d at 182.

The court may make only limited credibility determinations in a <u>Spears</u> hearing, <u>Norton v. Dimazana</u>, 122 F.3d 286, 292 (5th Cir. 1997) (citing <u>Cay v. Estelle</u>, 789 F.2d 318, 326-27 (5th Cir. 1986), <u>overruled on other grounds by Denton v. Hernandez</u>, 504 U.S. 25, 112 S.Ct. 1728 (1992)), and may consider and rely upon documents as additional evidence, as long as they are properly identified, authentic and reliable. "The Court should allow proper cross-examination and should require that the parties properly identify and authenticate documents. A defendant may not use medical records to refute a plaintiff's testimony at a <u>Spears</u> hearing." <u>Id.</u> (citing <u>Wilson</u>, 926 F.2d at 482-83; <u>Williams v. Luna</u>, 909 F.2d 121, 124 (5th Cir. 1990)). However, "'[m]edical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference.'" <u>Gobert v. Caldwell</u>, 463 F.3d 339, 347 n.24 (5th Cir. 2006) (quoting <u>Banuelos v. McFarland</u>, 41 F.3d 232, 235 (5th Cir. 1995)) (internal citations omitted).

After a <u>Spears</u> hearing, the complaint may be dismissed as legally frivolous if it lacks an arguable basis in law, <u>Jackson v. Vannoy</u>, 49 F.3d 175, 176-77 (5th Cir. 1995); <u>Moore v. Mabus</u>, 976 F.2d 268, 269 (5th Cir. 1992), or "as factually frivolous only if the

facts alleged are 'clearly baseless,' . . . [or] when the facts alleged rise to the level of the irrational or wholly incredible." Id. at 270.

"'A complaint lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist.'" Davis, 157 F.3d at 1005 (quoting McCormick v. Stalder, 105 F.3d 1059, 1061 (5th Cir. 1997)).  "When a complaint raises an arguable question of law which the district court ultimately finds is correctly resolved against the plaintiff, dismissal under Rule 12(b)(6) is appropriate; however, dismissal under the section 1915(d) standard is not." Moore, 976 F.2d at 269.  A prisoner's in forma pauperis complaint which fails to state a claim may be dismissed sua sponte at any time under 28 U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c)(1).

(B)    RULE 12(b)(6) MOTIONS TO DISMISS

Several defendants in this case have filed motions to dismiss for failure to state a claim upon which relief can be granted.  The Supreme Court recently clarified the standard for a motion to dismiss under Fed. R. Civ. P. 12(b)(6):

> "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  A claim for relief is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  A claim for relief is implausible on its face when "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct."

Harold H. Huggins Realty, Inc. v. FNC, Inc., 634 F.3d 787, 796 (5th Cir. 2011) (quoting

Iqbal, 556 U.S. at 678) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007))).

"[A] court should not dismiss an action for failure to state a claim under Rule

12(b)(6) without giving the Plaintiff an opportunity to amend." Litson-Gruenber v.

JPMorgan Chase & Co., No. 7:09-cv-056-0, 2009 WL 4884426, at *6 (N.D. Tex. Dec.

16, 2009) (citing Hart v. Bayer Corp., 199 F.3d 239, 248 n.6 (5th Cir. 2000)); accord

Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co., 313 F.3d 305, 329 (5th Cir.

2002); Linck v. Brownsville Navig. Dist., 4 F.3d 989, 1993 WL 360773, at *4 (5th Cir.

1993).   In Patterson's case, that opportunity has been provided through the Spears

testimony process.

*   *   *

In this case, plaintiff's complaint may be dismissed under 28 U.S.C. § 1915(e) and

42 U.S.C. § 1997e(c)(1), either as frivolous because it lacks an arguable basis in law or

under Rule 12(b)(6) in light of his testimony explaining the factual basis of his claims.

Plaintiff's complaint, as amended by his testimony at the Spears hearing, fails to state a

claim under the broadest reading,[1] and the pending defense motions to dismiss should all

be granted.

## II.   PLAINTIFF'S CLAIMS/ DEFENDANTS' MOTIONS

---

[1] The court must "liberally construe briefs of pro se litigants and apply less stringent standards to parties proceeding pro se than to parties represented by counsel," Smith v. Lonestar Constr., Inc., 452 F. App'x 475, 476 (5th Cir. 2011), cert. denied, 132 S. Ct. 1746 (2012) (quotation omitted); Moore v. McDonald, 30 F.3d 616, 620 (5th Cir. 1994), and I have done so in this case.

(A)    CLAIMS RELATING TO CRIMINAL PROCEEDINGS

    (1)    JUDICIAL IMMUNITY

Plaintiff's claims against Orleans Parish Criminal District Judge Frank Marullo are barred by judicial immunity.  For more than one hundred years, judges have been held immune from liability for judicial acts done within their jurisdiction.  Stump v. Sparkman, 435 U.S. 349, 356 (1978) (citing Bradley v. Fisher, 80 U.S. 335 (1871)); Mays v. Sudderth, 97 F.3d 107, 110 (5th Cir. 1996).  "A judge, of whatever status in the judicial hierarchy, is immune from suit for damages resulting from any acts performed in [his or her] judicial role."  Ammons v. Baldwin, 705 F.2d 1445, 1447 (5th Cir. 1983) (citations omitted); accord Mays, 97 F.3d at 110-11.  This judicial immunity applies even if a judge is accused of acting maliciously or corruptly.  Stump, 435 U.S. at 356-57; Pierson v. Ray, 386 U.S. 547, 554 (1967), overruled in part on other grounds by Harlow v. Fitzgerald, 457 U.S. 800 (1982), as recognized by Hill v. Shelander, 992 F.2d 714, 716 (7th Cir. 1993); Mays, 97 F.3d at 110-11.  Judicial officers are absolutely immune from liability for damages unless they are without jurisdiction.  Id. at 111; Dayse v. Schuldt, 894 F.2d 170, 172 (5th Cir. 1990); Freeze v. Griffith, 849 F.2d 172, 175 (5th Cir. 1988).

In the past, however, judicial officers did not enjoy absolute immunity from suits seeking injunctive relief.  Relief of that nature was available under Section 1983 against state court judges acting in their judicial capacity.  Pulliam v. Allen, 466 U.S. 522, 541-42 (1984).  However, the Federal Courts Improvement Act of 1996 ("FCIA") amended

Section 1983 to provide that "in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief is unavailable." 42 U.S.C. § 1983.

The FCIA therefore statutorily overruled <u>Pulliam</u>'s holding regarding the availability of injunctive relief against a state judge in his official capacity. <u>Guerin v. Higgins</u>, No. 00-0244, 2001 WL 363486, at *1 (2d Cir. 2001) (unpublished); <u>Nollet v. Justices</u>, 83 F. Supp. 2d 204, 210 (D. Mass. 2000); <u>see also</u> <u>Bolin v. Story</u>, 225 F.3d 1234, 1242 (11th Cir. 2000) (1996 amendment to Section 1983 limits the relief available against a federal judge to declaratory relief). Thus, neither injunctive relief nor damages are available in this Section 1983 action against this defendant. <u>Tesmer v. Granholm</u>, 114 F. Supp. 2d 603, 618 (E.D. Mich. 2000); <u>Nollet</u>, 83 F. Supp. 2d at 210.

Furthermore, to whatever extent, if any, that Patterson seeks an order of this court directing the judge to take action concerning plaintiff's state court proceedings, a federal court has no power to direct a state court or its judicial officers in the performance of their duties when mandamus is the only relief sought. <u>In re Campbell</u>, 264 F.3d 730, 731 (7th Cir. 2001); <u>Santee v. Quinlan</u>, C.A. No. 96-3417, Record Doc. Nos. 3, 7, 8 (Nov. 5 & 27, 1996) (Duval, J.), <u>aff'd</u>, 115 F.3d 355, 356-57 (5th Cir. 1997); <u>Russell v. Knight</u>, 488 F.2d 96, 97 (5th Cir. 1973); <u>Moye v. Clerk</u>, 474 F.2d 1275, 1276 (5th Cir. 1973); <u>Lamar v. 118th Judicial Dist. Court</u>, 440 F.2d 383, 384 (5th Cir. 1971); <u>White v.</u>

15

<u>Stricklin</u>, No. 3:02-CV-688-D, 2002 WL 1125747, at *2 (N.D. Tex. May 23, 2002);

<u>Norman v. Louisiana S. Ct.</u>, No. 01-2225, 2001 WL 881298, at *1 (E.D. La. Aug. 3,

2001) (Duval, J.).  This court is without authority to order officials of the state court in

which plaintiff's criminal case is pending to treat his claims in any particular way or to

otherwise interfere with the rulings of its judges.

Patterson's claims against Judge Marullo concern actions that are exclusively

within the scope of the judge's role as a judicial officer and therefore within his

jurisdiction.  Consequently, the doctrine of absolute judicial immunity bars Patterson's

suit against Judge Marullo. For these reasons, all of Patterson's claims against this

defendant must be dismissed as legally frivolous or for failure to state a claim for which

relief can be granted, all because this defendant is immune.  28 U.S.C. §§ 1915(e)(2)(iii)

and 1915A(b)(2).

(2)     <u>PROSECUTORIAL IMMUNITY</u>

Orleans Parish District Attorney Leon Cannizarro and Assistant District Attorneys

Michael Daniels and Alex Calenda have been named as defendants in this case based

solely upon their actions as prosecutors in connection with state court criminal

proceedings against Patterson.  To the extent that Patterson asserts claims against these

defendants in their individual capacity, they are immune from suit, and their motion to

dismiss must be granted.

Courts employ a "functional" test to determine whether officials are entitled to absolute immunity, in which they look to the "nature of the function performed, not the identity of the actor who performed it." Forrester v. White, 484 U.S. 219, 227-29 (1988); accord Hill v. City of Seven Points, 31 Fed. Appx. 835, 2002 WL 243261, at *10 (5th Cir. 2002); Hulsey v. Owens, 63 F.3d 354, 356 (5th Cir. 1995).

It is well established that prosecutors are immune from liability under Section 1983 for actions taken as an advocate in pursuit of a criminal prosecution. Cleavinger v. Saxner, 474 U.S. 193, 200 (1985); Quinn v. Roach, 326 Fed. Appx. 280, 2009 WL 1181072, at *9 (5th Cir. 2009); Hill, 2002 WL 243261, at *10. This immunity applies to a prosecutor's actions in "initiating prosecution and carrying [a] criminal case through the judicial process." Id. (quotation omitted); accord Buckley v. Fitzsimmons, 509 U.S. 259, 270, 272 (1993); Quinn, 2009 WL 1181072, at *9.

Thus, "[a] prosecutor enjoys absolute immunity from personal liability for damages under section 1983 for actions 'initiating a prosecution and . . . presenting the State's case' and those 'intimately associated with the judicial phase of the criminal process.'" Esteves v. Brock, 106 F.3d 674, 676 (5th Cir. 1997) (quoting Imbler v. Pachtman, 424 U.S. 409, 430-31 (1976)); accord Quinn, 2009 WL 1181072, at *9; Hill, 2002 WL 243261, at *10. "A prosecutor's absolute immunity will not be stripped because of action that was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the clear

absence of all jurisdiction." <u>Kerr v. Lyford</u>, 171 F.3d 330, 337 & n.10 (5th Cir. 1999), <u>abrogated in part on other grounds by Castellano v. Fragozo</u>, 352 F.3d 939 (5th Cir. 2003) (quotation omitted); <u>accord</u> <u>Champluvier v. Couch</u>, 309 Fed. Appx. 902, 2009 WL 320829, at *1 (5th Cir. 2009); <u>Hill</u>, 2002 WL 243261, at *10.

In the instant case, the actions of the district attorney and the assistant prosecutors in his office concerning criminal charges against Patterson in Orleans Parish form the exclusive basis of plaintiff's claims against them. The assistant district attorneys' actions in initiating and pursuing the prosecution of Patterson fall well within the ambit of the judicial phase of the criminal process for which prosecutors are immune from liability. Plaintiff has failed to allege any actions in which the district attorney or his assistants were functioning outside the scope of prosecutorial immunity. Therefore, all damages claims, if any, against these defendants in their individual capacity must be dismissed.

However, while prosecutors enjoy absolute immunity from damages liability, they are not immune from Section 1983 suits seeking injunctive relief. <u>Supreme Ct. v. Consumers Union of U.S., Inc.</u>, 446 U.S. 719, 736-37 (1980) (citing <u>Gerstein v. Pugh</u>, 420 U.S. 103 (1975)). In this case, Patterson seeks monetary and injunctive relief concerning the charges against him.

Thus, the prosecutors are not immune from the injunctive relief sought in the complaint. However, plaintiff's claims against the district attorney and his assistants are

subject to dismissal with prejudice as legally frivolous or for failure to state a claim for which relief can be granted under <u>Heck v. Humphrey</u>, 512 U.S. 477 (1994).

> (3)   HECK BARS PLAINTIFF'S SECTION 1983 CLAIMS CONCERNING <u>HIS CRIMINAL PROCEEDINGS</u>

Read broadly, Patterson's complaint seeks relief arising from alleged constitutional deficiencies in his state court criminal proceedings.  All such claims must be dismissed at this time under <u>Heck v. Humphrey</u>, 512 U.S. 477 (1994).  In <u>Heck</u>, the Supreme Court held that a civil action for alleged civil rights violations that attacks the validity of state criminal charges or confinement, which have not been reversed, expunged, invalidated, or called into question by a federal court's issuance of a writ of habeas corpus, is not cognizable under Section 1983.

> [T]o recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254.  A claim for damages bearing that relationship to a conviction or sentence that has <u>not</u> been so invalidated is not cognizable under § 1983.  Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.

<u>Id.</u> at 486-87 (emphasis in original) (footnote omitted). Although the Supreme Court's decision in <u>Heck</u> concerned a civil action for monetary damages, the United States Court

of Appeals for the Fifth Circuit has also applied Heck in cases in which the plaintiff seeks injunctive relief.  Clarke v. Stalder, 154 F.3d 186, 189 (5th Cir. 1998) (en banc) (citing Edwards v. Balisok, 520 U.S. 641, 117 S. Ct. 1584 (1997)).

Plaintiff's claims are clearly connected to the validity of his present confinement and the charges he conceded in his testimony remain pending against him. Heck, 512 U.S. at 479 (Convicted prisoner's Section 1983 action for damages barred because it challenged the conduct of state officials who allegedly "'had engaged in an 'unlawful, unreasonable, and arbitrary investigation' leading to petitioner's arrest; 'knowingly destroyed' evidence 'which was exculpatory in nature and could have proved [petitioner's] innocence'; and caused 'an illegal and unlawful voice identification procedure' to be used at petitioner's trial."); Ruiz v. Hofbauer, 325 F. App'x 427, 431 (6th Cir. 2009), cert. denied, 130 S. Ct. 413 (2009) (Section 1983 claims were barred when convicted inmate alleged that defendants violated his civil rights "to maliciously prosecute plaintiff by tampering with 'Brady exculpatory evidence' and using the prosecutor's office and Michigan State Police to take that evidence and withhold it from [plaintiff] during the course of the malicious prosecution."); White v. Fox, 294 F. App'x 955, 958 (5th Cir. 2008) ("If we were to find that prison officials altered and destroyed evidence relevant to the [disciplinary] charges against White, that judgment would necessarily imply the invalidity of his subsequent convictions and sentences on those charges."); Penley v. Collin County, 446 F.3d 572, 573 (5th Cir. 2006) ("To the extent

that the district court were to award Penley damages on his claim regarding the destruction of evidence and the loss of the opportunity for DNA testing, the validity of his conviction would be implicitly questioned.").

Patterson testified that he is currently incarcerated in the Jackson Parish Correctional Center based upon convictions for being a felon in possession of a firearm and resisting arrest by force, having been arrested and charged with these offenses and drug violations following an October 4, 2011 arrest by New Orleans police officers who are defendants in this case.  He testified that he was convicted on August 15, 2012, and he confirmed that drug charges against him are still pending in Orleans Parish.  He said he is serving a 12-year sentence on the charges for which he has already been convicted. His confinement and pending charges have <u>not</u> been set aside in any of the ways described in <u>Heck</u>.  Thus, all claims for relief that he asserts against all defendants, challenging his continued confinement and the pending charges, are premature and must be dismissed.  As the Fifth Circuit has noted, the dismissal of plaintiff's Section 1983 claims is with prejudice to their being asserted again until the <u>Heck</u> conditions are met. <u>Johnson v. McElveen</u>, 101 F.3d 423, 424 (5th Cir. 1996).

(4)    <u>PUBLIC DEFENDERS ARE NOT STATE ACTORS</u>

Orleans Parish Indigent Defenders Jason Ullman and Kendall Green, who are sued in this action under Section 1983, are attorneys who allegedly acted as public defenders representing plaintiff in his state court criminal proceedings.

To be successful under Section 1983, a plaintiff must establish that a defendant has acted under color of state law in violating his rights.  Daniels v. Williams, 474 U.S. 327 (1986).  To state a claim under Section 1983, a plaintiff must show (1) deprivation of a right, privilege or immunity secured by the federal laws or Constitution (2) by one acting under color of state law.  James v. Texas Collin County, 535 F.3d 365, 373 (5th Cir. 2008); Calhoun v. Hargrove, 312 F.3d 730, 734 (5th Cir. 2002); Mississippi Women's Med. Clinic v. McMillan, 866 F.2d 788, 791 (5th Cir. 1989).  Thus, plaintiff must show that Ullman and Green's actions are "fairly attributable to the state."  West v. Atkins, 487 U.S. 42, 49 (1988); accord Johnson ex rel. Wilson v. Dowd, 305 Fed. Appx. 221, 2008 WL 5212795, at *2 (5th Cir. 2008); Cornish v. Correctional Servs. Corp., 402 F.3d 545, 549 (5th Cir. 2005).

The law is clear that under no circumstances can these defendants, as public defender attorneys for Patterson in his criminal case, be considered state actors as a matter of law.  Polk County v. Dodson, 454 U.S. 312, 325 (1981); Small v. Dallas County, 170 Fed. Appx. 943, 2006 WL 925500, at *1 (5th Cir. 2006) (citing Hudson v. Hughes, 98 F.3d 868, 873 (5th Cir. 1996); Mills v. Criminal Dist. Ct. No. 3, 837 F.2d 677, 679 (5th Cir. 1988)).  Because these defendants are not state actors, plaintiff's Section 1983 claims against them have no basis in federal law, and their motion seeking dismissal for failure to state a cognizable claim must be granted.

(B)   <u>MEDICAL CARE</u>

Patterson was a pretrial detainee for part of the time and a convicted prisoner for the remainder of the period about which he complains about his medical care, both at West Jefferson Medical Center and at OPP.  He asserts that he received inadequate medical care for the injuries he suffered in his arrest and for other ailments.

Before the Fifth Circuit's decision in <u>Hare v. City of Corinth</u>, 74 F.3d 633 (5th Cir. 1996), it appeared that prison officials must provide pretrial detainees with reasonable medical care unless the failure to provide it was reasonably related to a legitimate government interest.  <u>Bell v. Wolfish</u>,  441 U.S. 520, 539 (1979); <u>Cupit v. Jones</u>, 835 F.2d 82, 85 (5th Cir. 1987); <u>Mayweather v. Foti</u>, 958 F.2d 91 (5th Cir. 1992).  The inquiry was "whether the denial of medical care . . . was objectively reasonable in light of the Fourteenth Amendment's guarantee of reasonable medical care and prohibition on punishment of pretrial detainees."  <u>Pfannstiel v. City of Marion</u>, 918 F.2d 1178, 1186 (5th Cir. 1990), <u>abrogated on other grounds as recognized in Martin v. Thomas</u>, 973 F.2d 449, 455 (5th Cir. 1992).

In <u>Hare</u>, however, the Fifth Circuit held:

> (1) that the State owes the same duty under the Due Process Clause and the Eighth Amendment to provide both pretrial detainees and convicted inmates with basic human needs, including medical care and protection from harm, during their confinement; and (2) that a state jail official's liability for episodic acts or omissions cannot attach unless the official had subjective knowledge of a substantial risk of serious harm to a pretrial detainee but responded with deliberate indifference to that risk.

Hare, 74 F.3d at 650.  The Fifth Circuit explained that for the Bell "reasonable relationship" test to be applicable, the pretrial detainee must be able to show that a prison official's act either "implement[s] a rule or restriction or otherwise demonstrate[s] the existence of an identifiable intended condition or practice" or that the "official's acts or omissions were sufficiently extended or pervasive, or otherwise typical of extended or pervasive misconduct by other officials, to prove an intended condition or practice."  Id. at 645.  If the pretrial detainee is unable to prove either, the incident will be considered to be an episodic act or omission, and the deliberate indifference standard enunciated in Estelle v. Gamble, 429 U.S. 97, 104 (1976), will apply.  Shepherd v. Dallas County, 591 F.3d 445, 452 (5th Cir. 2009) (citing Bell, 441 U.S. at 539; Scott v. Moore, 114 F.3d 51, 53 (5th Cir. 1997); Hare, 74 F.3d at 649); Tamez v. Manthey, 589 F.3d 764, 769-70 (5th Cir. 2009) (citing Scott, 114 F.3d at 53; Hare, 74 F.3d at 649).

In Estelle, the Supreme Court held that a convicted prisoner may succeed on a claim for damages under 42 U.S.C. § 1983 for inadequate medical care only if he demonstrates that there has been "deliberate indifference to serious medical needs" by prison officials or other state actors.  Only deliberate indifference, "an unnecessary and wanton infliction of pain . . . or acts repugnant to the conscience of mankind," constitutes conduct proscribed by the Eighth Amendment.  Estelle, 429 U.S. at 105-06; accord Gregg v. Georgia, 428 U.S. 153, 182-83 (1976); Tamez, 589 F.3d at 770; Hare, 74 F.3d at 650.  As discussed above, "deliberate indifference" means that a prison official is

24

liable "only if he knows that the inmates face a substantial risk of serious harm and [he] disregards that risk by failing to take reasonable measures to abate it." Farmer v. Brennan, 511 U.S. 825, 847 (1994). The Farmer definition applies to Eighth Amendment medical claims. Reeves, 27 F.3d at 176.

An inmate who alleges constitutionally inadequate medical care must satisfy two requirements to demonstrate that a prison official has violated the Eighth Amendment. If the court finds that one of the components of the test is not met, it need not address the other component. Davis, 157 F.3d at 1005. "First, the deprivation alleged must be, objectively, 'sufficiently serious'; a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities." Farmer, 511 U.S. at 834 (quotation omitted). Thus, plaintiff must show that defendants "exhibited deliberate indifference to his serious medical needs." Cooper v. Johnson, 353 F. App'x 965, 967 (5th Cir. 2009) (citing Wilson v. Seiter, 501 U.S. 294, 297 (1991)); accord Harris v. Hegmann, 198 F.3d 153, 159 (5th Cir. 1999); Mendoza v. Lynaugh, 989 F.2d 191, 193 (5th Cir. 1993).

Further, plaintiff must establish that defendant possessed a culpable state of mind. Farmer, 511 U.S. at 838 (citing Wilson, 501 U.S. at 298). A prison official cannot be held liable "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."

Id. at 837; accord Tamez, 589 F.3d at 770 (citing Thompson v. Upshur County, 245 F.3d 447, 458-59 (5th Cir. 2001)).  "Such a showing requires the inmate to allege that prison officials 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.'"  Brewster v. Dretke, 587 F.3d 764, 770 (5th Cir. 2009), cert. denied, 130 S. Ct. 3368 (2010) (quoting Domino v. Texas Dep't of Crim. Justice, 239 F.3d 752, 756 (5th Cir. 2001)) (emphasis added). As noted above, "'deliberate indifference' is a stringent standard of fault." Southard, 114 F.3d at 551 (quoting Board of County Comm'rs, 520 U.S. at 410 (other quotations omitted)) (emphasis added); accord Tamez, 589 F.3d at 770. Once again, "'[s]ubjective recklessness,'" as used in the criminal law, is the appropriate test for deliberate indifference." Norton, 122 F.3d at 291.

In the instant case, plaintiff's pleadings, as expanded by his testimony, establish that nothing more than episodic acts or omissions as defined in Hare are at issue.  See Tamez, 589 F.3d at 770 (defendants' alleged refusal "to provide [prisoner] with immediate medical treatment qualifies as an 'episodic act or omission'").  Therefore, the "deliberate indifference" standard applies, and Patterson must allege facts sufficient to establish that the defendants who were his medical care providers at the West Jefferson Medical Center and OPP knew he faced a substantial risk of serious harm and disregarded that risk by failing to take reasonable measures to abate it.  In this case,

plaintiff wholly fails to allege facts sufficient to satisfy any of the essential elements of his claim, including especially the stringent "deliberate indifference" standard.

Initially, it cannot be concluded that any of the injuries or other ailments about which Patterson complains constituted serious medical needs for purposes of constitutional analysis.  Plaintiff did not suffer "a life-long handicap or permanent loss" of the type required to constitute a serious medical need for constitutional purposes.  See Hill v. Dekalb Reg'l Youth Detention Ctr., 40 F.3d 1176, 1188 (11th Cir. 1994), overruled in part on other grounds by Hope v. Peltzer, 536 U.S. 730, 739 (2002) (citing Monmouth County v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987) (medical need is serious when it "results in an inmate's suffering 'a life-long handicap or permanent loss'")); Dickson v. Colman, 569 F.2d 1310, 1311 (5th Cir. 1978) (no serious medical need was demonstrated when plaintiff's high blood pressure presented no "true danger" or "serious threat" to his health).  None of Patterson's injuries rise to the level of serious medical needs for constitutional purposes.  See, e.g., Lockett v. Suardini, 526 F.3d 866, 877 (6th Cir. 2008) ("minor lacerations and cuts" and soreness in two fingers, which were no longer obvious upon medical examination within 24 hours after altercation, were not serious medical needs); Vaughn v. City of Lebanon, 18 F. App'x 252, 274-75 (6th Cir. 2001) (no serious medical need when treating physicians analogized plaintiff's pepper-spray-related symptoms to a case of poison ivy and when his cuts, bruises and abrasions from struggle were visible but not permanent); Dawes v. Coughlin, 159 F.3d 1346, 1998

27

WL 513944, at *1 (2d Cir. 1998) (small laceration not a serious medical need); <u>Davis v. Jones</u>, 936 F.2d 971, 972-73 (7th Cir. 1991) (one-inch laceration not serious medical need); <u>Benitez v. Locastro</u>, No. 9:04-CV-423, 2010 WL 419999, at *7 (N.D.N.Y. Jan. 29, 2010) (bruises and a laceration not serious medical conditions); <u>Willacy v. County of Brevard</u>, No. 04-cv-1666-Orl-18DAB, 2007 WL 1017657, at *9 (M.D. Fla. Mar. 30, 2007) (inmate who alleged that he suffered numerous lacerations, contusions, bruising and burning sensation in his eyes after being attacked by another inmate, but did not seek further medical assistance after his wounds were cleaned, failed to assert a serious medical need).

Even assuming, however, but certainly without concluding, that plaintiff's injuries and other ailments presented a serious medical need for constitutional purposes, Patterson has alleged facts, confirmed by his testimony and the verified medical records, that negate any inference of deliberate indifference by jail officials. His complaint, as amended by his testimony and confirmed by the medical records, shows that he received constitutionally adequate medical care while incarcerated in OPP.

Patterson testified and the medical records confirm that he was taken to the emergency room for treatment immediately following his arrest. In the emergency room he was sedated, examined, X-rayed and treated. Thereafter at OPP, he was given medications, including antibiotics, Naprosyn, Ultram and Neurontin, and seen on multiple occasions by nurse practitioners. For a six-week period in OPP, he was removed

from the prison general population and housed in the jail medical tier.

This record does not support an inference that defendants were deliberately indifferent to plaintiff's serious medical needs in the constitutional sense.  See, e.g., Raspberry v. Johnson, 281 F.3d 1279, 2001 WL 1692494, at *1 (5th Cir. 2001) (citing Domino, 239 F.3d 752, 754 (5th Cir. 2001)) (Plaintiff with injured hand and bruises failed to allege deliberate indifference to serious medical needs when he was examined by medical personnel and the injuries healed on their own.); Johnson v. City of Centreville, No. 5:04cv309-DCB-JCS, 2006 WL 1795735, at *3-4 (S.D. Miss. June 28, 2006) (Bramlette, J.) (citing Raspberry, 281 F.3d at 1279; Turk v. Thomas, 121 Fed. Appx. 24, 2005 WL 32817, at *1 (5th Cir. 2005)) (There were no constitutional violations when second plaintiff was seen at hospital eight hours after altercation and was discharged after receiving minimal treatment for his injuries, including a tetanus shot, an ice pack and a pain medication prescription.); Valenzuela v. Smith, No. S 04-0900, 2006 WL 403842, at *11 (E.D. Cal. Feb. 16, 2006), report & recommendation adopted, 2006 WL 736765 (E.D. Cal. Mar. 22, 2006), aff'd, 249 Fed. Appx. 528 (9th Cir. 2007) (No deliberate indifference was shown when plaintiff's fractured thumb was examined and treated regularly, pain medication was prescribed and radiology reports reflected progress in the healing of plaintiff's thumb and ultimately showed "a normal thumb.").

Although Patterson has expressed dissatisfaction with the overall quality and effectiveness of treatment, none of his allegations rise to the level of deliberate

29

indifference necessary to establish a constitutional violation cognizable under Section 1983.

> [T]he decision whether to provide additional treatment is a classic example of a matter for medical judgment.  A showing of deliberate indifference requires the prisoner to submit evidence that prison officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.  Deliberate indifference is an extremely high standard to meet.

Gobert, 463 F.3d at 346 (footnotes, citations and internal quotations omitted) (emphasis added).  No such showing has been made on the current record.  The decisions made by the treating medical providers to render the care that they gave, including for example providing particular pain medications, are classic examples of the exercise of "medical judgment," which, even if incorrect, cannot serve as the basis for a finding of deliberate indifference in the constitutional sense.

Contentions like Patterson's that amount to a mere disagreement with the quality or extent of medical treatment or even negligence do not give rise to a Section 1983 claim.  "[A]lthough inadequate medical treatment may, at a certain point, rise to the level of a constitutional violation, malpractice or negligent care does not."  Stewart v. Murphy, 174 F.3d 530, 534 (5th Cir. 1999) (citation omitted) (active treatment of prisoner's serious medical condition, which ultimately resulted in death, does not constitute deliberate indifference, even if treatment was negligently administered); Rowe v. Norris, 198 Fed. Appx. 579, 581 (8th Cir. 2006) (no constitutional violation when inmate

disagreed with physician's choice of medication); see also Estelle, 429 U.S. at 107 (The "question whether an X-ray or additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment.  A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment. At most, it is medical malpractice . . . ."); Corte v. Schaffer, 24 F.3d 237, 1994 WL 242793, at *1 (5th Cir. 1994) (Contrary to plaintiff's allegation that he had received "no treatment" because he believed he needed a referral to a specialist, he failed to demonstrate deliberate indifference when he was seen by prison medical personnel with results being within a normal range.); Marksberry v. O'Dea, 173 F.3d 855, 1999 WL 98533, at *2 (6th Cir. Jan. 28, 1999) (plaintiff who alleged inadequate treatment for broken hand failed to state constitutional violation, when he was examined by physician and received x-rays and medication); Mendoza v. Lynaugh, 989 F.2d 191, 193 (5th Cir. 1993) (prisoner's disagreement with the type or timing of medical services provided cannot support a Section 1983 claim); Varnado v. Lynaugh, 920 F.2d 320, 321 (5th Cir. 1991) (plaintiff, who was 18 months post-surgical implantation of hip prosthesis, who complained of pain in his hip and who was ultimately diagnosed with broken wires in the prosthesis, failed to state a claim for deliberate indifference when he was seen by medical personnel "numerous times for problems relating to his hip.");  Wesson v. Oglesby, 910 F.2d 278, 284 (5th Cir. 1990) (allegations establishing provision of medical treatment found inconsistent with inference of deliberate indifference).

Under these circumstances, plaintiff cannot state a cognizable Section 1983 claim that defendants were deliberately indifferent to his serious medical needs.  For all of the foregoing reasons, plaintiff's complaints in this case about his medical care advance a legally frivolous argument and fail to state a claim for relief under Section 1983. Thus, the motion to dismiss filed by Dr. Adames and Jefferson Hospital District No. 1 (West Jefferson Medical Center) must be granted, and all claims against the OPP medical care providers, Nurse Powers, Dr. Gore and Nurse Pounds, must be dismissed.

(C)   <u>EXCESSIVE FORCE</u>

Patterson alleged that he suffered a broken ankle, a fractured elbow, torn muscles and other injuries on October 4, 2011 during his arrest on the gun and drug charges he described earlier. He testified that New Orleans Police Officers Wachs, Wesley Humbles, Jason Hickman, Teresa Morris, Rafael Dobard, Hurds, Hillary Laurent and others injured him during that arrest.  He stated that the officers shot him with tasers, beat him with batons, sprayed him with pepper spray and twisted his ankle. Patterson clearly confirmed during his testimony, however, that this was the same incident that was the basis of his subsequent conviction for resisting arrest by force, for which he is currently serving the prison sentence.  Thus, regardless whether Patterson seeks injunctive relief or damages under Section 1983 for use of excessive force during this arrest, his excessive force claims must be dismissed at this time under <u>Heck</u>, 512 U.S. at 477.

32

As set out in the quote noted above, in <u>Heck</u>, the Supreme Court held that a civil action for alleged civil rights violations that attacks the validity of state confinement, which has not been reversed, expunged, invalidated, or called into question by a federal court's issuance of a writ of habeas corpus, is not cognizable under Section 1983.

As the United States Court of Appeals for the Fifth Circuit has found in the decision cited below, plaintiff's Section 1983 excessive force claim in the instant case necessarily implies the invalidity of his conviction for resisting arrest by force under <u>Heck</u>, and that confinement has <u>not</u> been set aside.  Patterson's Section 1983 claim of excessive force in this court must fail because it necessarily impugns the validity of his conviction and sentence for resisting arrest by force.  Because Patterson's conviction still stands and has not been set aside in any of the ways set out in <u>Heck</u>, his excessive force claim is effectively barred by <u>Heck</u>.

In a case presenting a claim similar to the one asserted by Patterson in this case,

> [plaintiff] was arrested and convicted of battery of an officer.  In Louisiana, self-defense is a justification defense to the crime of battery of an officer. To make out a justification defense, the criminal defendant charged with battery of an officer must show that his use of force against an officer was both reasonable and necessary to prevent a forcible offense against himself. Because self-defense is a justification defense to the crime of battery of an officer, [plaintiff's] claim that [the officers] . . . used excessive force while apprehending him, if proved, necessarily would imply the invalidity of his arrest and conviction for battery of an officer.  This is true because the question <u>whether the police applied reasonable force in arresting him depends in part on the degree of his resistance, which in turn will place in issue whether his resistance (the basis of his conviction for assaulting a police officer) was justified, which, if it were, necessarily undermines that conviction.</u>

Hudson v. Hughes, 98 F.3d 868, 873 (5th Cir. 1996) (citations omitted) (emphasis added).

The instant case is similar.  Patterson was convicted of resisting arrest by force. His claim that the officers used excessive force would necessarily imply the invalidity of his conviction for his own use of force.  Therefore, his excessive force claim is barred by Heck.

Plaintiff's claims are clearly connected to the validity of his conviction for resisting arrest by force.  Heck, 512 U.S. at 479; Arnold v. Town of Slaughter, No. 03-30941, 2004 WL 1336637, at *3-4 (5th Cir. June 14, 2004); Hainze v. Richards, 207 F.3d 795, 799 (5th Cir. 2000); Boyd v. Biggers, 31 F.3d 279, 283 (5th Cir. 1994).  However, his conviction has not been set aside in any of the ways described in Heck.  Thus, any claims of excessive force in violation of Section 1983 are premature and must be dismissed, until such time that his criminal conviction for resisting arrest by force is set aside.  As the Fifth Circuit has noted, the dismissal of these claims is with prejudice to their being asserted again until the Heck conditions are met.  Johnson, 101 F.3d at 424.

(D)    HARASSMENT AND FALSE DISCIPLINARY COMPLAINTS

Plaintiff's allegations that he was threatened and harassed by defendants Hudson, Crump and Jefferson are not cognizable under Section 1983.  Verbal threats by prison staff or other offenders do not rise to the level of a constitutional violation.  Field v. Corr. Corp., 364 F. App'x 927, 930 (5th Cir. 2010) (citing Robertson v. Plano City, 70 F.3d

21, 24 (5th Cir. 1995)); Matthews v. Graham, 235 F.3d 1339, 2000 WL 1672660, at *1 (5th Cir. 2000) (citing McFadden v. Lucas, 713 F.2d 143, 146 (5th Cir. 1983)).

"Claims of hurt feelings, humiliation, and other heartfelt, yet objectively trivial indignities, are not of Constitutional moment . . . ." Jackson v. Liberty County, 860 F. Supp. 360, 363 (E.D. Tex. 1994). Verbal harassment and abusive language, while unprofessional and inexcusable, are simply not sufficient to state a constitutional claim under 42 U.S.C. § 1983." Slagel v. Shell Oil Refinery, 811 F. Supp. 378, 382 (C.D. Ill. 1993), aff'd, 23 F.3d 410 (7th Cir. 1994).

In addition, to whatever extent, if any, that plaintiff may be claiming that his due process rights were violated based on false disciplinary charges, for which he was convicted but not punished except as a "paperwork" matter, he fails to state a claim of violation of his constitutional rights.

In Sandin v. Connor, 515 U.S. 472, 481-83 (1995), the United States Supreme Court held that analysis of a prisoner's due process claim relating to his placement in lockdown or other denial of prison privileges as disciplinary punishment begins with determining whether a constitutionally protected liberty interest exists. "Liberty interests protected by the Fourteenth Amendment may arise from two sources–the Due Process Clause itself and the laws of the States." Hewitt v. Helms, 459 U.S. 460, 466 (1983). In Sandin, the Supreme Court recognized that, although the States may create liberty interests, "these interests will generally be limited to freedom from restraint which . . .

35

imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin, 515 U.S. at 484 (citations omitted). Thus, in Sandin, when a prisoner was placed in disciplinary segregation for 30 days and the placement did not inevitably affect the duration of his sentence, the Court held that due process does not require that a prisoner be afforded the procedural mechanisms previously prescribed in Wolff v. McDonnell, 418 U.S. 539 (1974), and Hewitt, 459 U.S. at 460.

"[T]he Due Process Clause does not protect every change in conditions of confinement which has a substantial adverse effect upon a prisoner." Madison v. Parker, 104 F.3d 765, 767 (5th Cir. 1997). "Prisoners held in lawful confinement have their liberty curtailed by definition, so the procedural protections to which they are entitled are more limited than in cases where the right at stake is the right to be free from confinement at all." Wilkinson v. Austin, 545 U.S. 209, 225 (2005) (citations omitted). The Fifth Circuit in Madison held that a prisoner's 30-day commissary and cell restrictions imposed as punishment for disciplinary violations were "merely changes in the conditions of his confinement and do not implicate due process concerns." Madison, 104 F.3d at 768; accord Hernandez v. Velasquez, 522 F.3d 556, 563 (5th Cir. 2008); Dixon v. Hastings, 117 Fed. Appx. 371, 2005 WL 17382, at *1 (5th Cir. 2005); Malchi v. Thaler, 211 F.3d 953, 957-58 (5th Cir. 2000). In Hernandez and Madison, the Fifth Circuit held that such restrictions do not represent the type of atypical, significant

deprivation in which a state might create a liberty interest.  Hernandez, 522 F.3d at 563;

Madison, 104 F.3d at 768.

Examples of prison hardships that would qualify as so atypical and significant as

to implicate due process considerations include unwanted administration of anti-

psychotic drugs, involuntary commitment to a mental hospital or extension of the

prisoner's sentence for his underlying criminal conviction.  Sandin, 515 U.S. at 484.

In the instant case, Patterson's testimony and his written submissions establish that

he suffered no punishment of any kind against him based upon the allegedly false

disciplinary assertions.  Thus, he suffered no consequences of any kind that constituted

such an "atypical and significant hardship on the inmate in relation to the ordinary

incidents of prison life" that particular forms of process of the type described in Wolff

were required.  Sandin, 515 U.S. at 484; Madison, 104 F.3d at 768; see Johnson v.

Livingston, 360 F. App'x 531, 532 (5th Cir. 2010) (citing Malchi v. Thaler, 211 F.3d

953, 958 (5th Cir. 2000)) ("Loss of privileges and cell restriction do not implicate due

process concerns."), petition for cert. filed, (U.S. May 8, 2010) (No. 09-10742);

Hernandez, 522 F.3d at 563 (distinguishing the "extreme conditions" described in

Wilkinson and holding that non-disciplinary "confinement to a shared cell for twelve

months with permission to leave only for showers, medical appointments and family

visits . . . is by no means an atypical prison experience"); Dixon, 117 F. App'x at 372

("loss of commissary privileges, cell restriction, placement in administrative segregation,

and extended work schedule were not atypical punishments requiring due process protections"); Payne v. Dretke, 80 F. App'x 314, 314 (5th Cir. 2003) ("commissary and recreation restrictions [as disciplinary punishment] . . . do not implicate a liberty interest under the Due Process Clause").

For all of the foregoing reasons, Patterson's claims against any defendant, including Crump and Jefferson, that he was harassed in OPP by the filing of false disciplinary charges against him fails to state a claim upon which relief can be granted and must be dismissed. As discussed above, to whatever extent, if any, that Patterson asserts claims that the false disciplinary charges also formed an improper basis for criminal charges relating to drug violations subsequently filed against him in court; for example, against defendants Hudson, Flagg and Dave, they must be dismissed under Heck.

(E)     SHERIFF GUSMAN

Patterson makes no allegation that defendant Sheriff Gusman was personally involved in any of the events upon which he bases this lawsuit.  There are no allegations that the sheriff participated in his medical care or the allegedly false charges against plaintiff. Instead, Patterson testified only that he notified the sheriff of his various complaints in writing, but the sheriff made no response.

"There is no respondeat superior liability under section 1983."  Eason v. Thaler, 73 F.3d 1322, 1327 (5th Cir. 1996); accord Field v. Corrections Corp., 364 F. App'x 927,

2010 WL 517679, at *1 (5th Cir. 2010); Cox v. Irby, 281 F. App'x 390, 391 (5th Cir. 2008); Kohler v. Englade, 470 F.3d 1104, 1114-15 (5th Cir. 2006).  Thus, this defendant cannot be held liable under Section 1983 pursuant to a theory of respondeat superior simply because the persons allegedly responsible for plaintiff's injury, if any, were in his employ or under his supervision.  Sanders v. English, 950 F.2d 1152, 1160 (5th Cir. 1992); Baskin v. Parker, 602 F.2d 1205, 1208 (5th Cir. 1979); Barksdale v. King, 699 F.2d 744, 746 (5th Cir. 1983).

To hold this defendant liable, plaintiff must establish either that he was "personally involved in the acts causing the deprivation of his constitutional rights or that a causal connection exists between an act of [this defendant] . . . and the alleged constitutional violation."  Douthit v. Jones, 641 F.2d 345, 346 (5th Cir. 1981); accord Cox, 281 F. App'x at 391 ; Kohler, 470 F.3d at 1115.  "It is facially evident that this test cannot be met if there is no underlying constitutional violation."  Rios v. City of Del Rio, 444 F.3d 417, 425-26 (5th Cir. 2006) (citing Breaux v. City of Garland, 205 F.3d 150, 161 (5th Cir. 2000)).  In the instant action, plaintiff has failed to establish either that this defendant was personally involved in any acts causing the deprivation of his constitutional rights or that a causal connection exists between an act of this defendant and the alleged constitutional violation.

A supervisory official may be held liable for his subordinates' actions only if the official implemented an unconstitutional policy that causally resulted in plaintiff's injury.

Monell v. Dep't of Social Servs., 436 U.S. 658, 691-95 (1978); Thompson v. Johnson, 348 F. App'x 919, 921 (5th Cir. 2009) (citing Mouille v. City of Live Oak, 977 F.2d 924, 929 (5th Cir. 1992)); Gates v. Texas Dep't of Protective & Regulatory Servs., 537 F.3d 404, 435 (5th Cir. 2008). Without alleging a particular custom, usage or policy for which the sheriff can be held constitutionally liable, plaintiff fails to state a claim for relief under Section 1983.  Monell, 436 U.S. at 691-95; Thompson, 348 F. App'x at 921-22; Mouille, 977 F.2d at 929.

"To hold a supervisory official liable for the acts of a subordinate, Patterson must show that "(1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference." Smith v. Brenoettsy, 158 F.3d 908, 911-12 (5th Cir.1998). To state a failure to protect claim under § 1983, Patterson must show that he is incarcerated under conditions posing a substantial risk of serious harm and that prison officials were deliberately indifferent to his need for protection.  Neals v. Norwood, 59 F.3d 530, 533 (5th Cir. 1995).  For an official to act with deliberate indifference for purposes of either claim, he "must both be aware of facts from which the inference could be drawn that substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)." Payne v. Pickett, 246 Fed. Appx. 884, 889-90, 2007 WL 2537839, *5 (5th Cir. 2007).

Patterson's complaint against Sheriff Gusman is wholly derivative of his other claims against OPP medical care providers and deputies who dealt directly with Patterson.  Under these circumstances, plaintiff states no cognizable Section 1983 cause of action against the sheriff, and all claims against him must be dismissed as legally frivolous.

(F)   <u>INJUNCTIVE RELIEF</u>

As noted above, about one month after the <u>Spears</u> hearing, Patterson filed a motion seeking injunctive relief concerning the conditions of his confinement at his new place of incarceration, the Jackson Parish Correctional Center at Jonesboro, Louisiana.  Record Doc. No. 49.  In his motion, Patterson complains about his medical care at Jackson; the conditions of his confinement, including "no ventilation, no daily exercise (outdoors)" and "unsanitary" conditions; inadequate access to the courts and the law library; and improper transfer to the Jackson facility at Jonesboro.  <u>Id.</u> at pp. 2-4.  He seeks a declaratory judgment that his treatment at Jackson is unconstitutional, transfer  to Hunt Correctional Center and other injunctive relief.  <u>Id.</u> at p. 7.  For the following reasons, I recommend that plaintiff's motion be DENIED.

According to Rule 65(b) of the Federal Rules of Civil Procedure, a party seeking a temporary restraining order and/or preliminary injunction must set forth "specific facts in an affidavit or a verified complaint" that "clearly show that immediate and irreparable injury, loss, or damage will result to the movant . . ." A temporary restraining order and

preliminary injunction are <u>extraordinary</u> equitable remedies that may be granted <u>only</u> if plaintiff clearly carries his burden of establishing four essential elements:   (1) a substantial likelihood of success on the merits; (2) a substantial threat that he will suffer irreparable injury if the injunction is denied; (3) the threatened injury outweighs any damage that the injunction might cause defendants; <u>and</u> (4) the injunction will not disserve the public interest.  <u>Southern Co. v. Dauben Inc.</u>, 324 Fed. Appx. 309, 2009 WL 1011183, *4 (5th Cir. 2009) (citing <u>Sugar</u> <u>Busters LLC v. Brennan</u>, 177 F.3d 258, 265 (5th Cir. 1999).  Part of the requisite showing is "a <u>substantial</u> threat of <u>irreparable</u> injury if the injunction is not issued."  <u>DSC Commc'ns Corp. v. OGI Techs., Inc.</u>, 81 F.3d 597, 600 (5th Cir. 1996) (emphasis added).

Applying the foregoing legal standards to the facts plaintiff alleges establishes that he is <u>not</u> entitled to a temporary restraining order or preliminary injunction at this time.

First, it cannot be concluded that plaintiff's complaint presents "a substantial likelihood of success on the merits." <u>DSC Commc'ns Corp.</u>, 81 F.3d at 600.  Plaintiff's claims are wholly conclusory and concern a facility, actions and actors <u>not</u> involved in his original complaint. In addition, he faces daunting burdens of proof as to all of his Section 1983 claims, including the necessity of proving that Jackson officials' alleged failure to provide adequate medical care were done with deliberate indifference, which the Supreme Court has described as "a stringent standard of fault," <u>Southard v. Texas Bd. of Crim. Justice</u>, 114 F.3d 539, 551 (5th Cir. 1997) (quoting <u>Board of the County</u>

42

Commissioners of Bryan County, Oklahoma v. Brown, 520 U.S. 397, 117 S. Ct. 1382,

1391 (1997)), requiring a showing of "'subjective recklessness,' as used in the criminal

law." Norton v. Dimazana, 122 F.3d 286, 292 (5th Cir. 1997) (citing Cay v. Estelle, 789

F.2d 318, 326-27 (5th Cir. 1986), overruled on other grounds by Denton v. Hernandez,

504 U.S. 25, 112 S. Ct. 1728 (1992)). The potent affirmative defense of qualified

immunity is available to all Jackson officials.

Plaintiff's allegations must be accepted as true for the initial screening process

required for his original complaint. 28 U.S.C. § 1915A; Martin v. Scott, 156 F.3d 578

(5th Cir. 1998). I have applied this standard in finding that plaintiff's case must be

dismissed at this time. No such requirement concerning different officials than those

named in his original complaint and a different prison facility applies to plaintiff's

request for injunctive relief. Under these circumstances, I cannot conclude that plaintiff

has a substantial likelihood of success on the merits for purposes of the entry of

preliminary injunctive relief.

Second, Patterson has not established that he faces a continuing substantial threat

of serious injury that would be irreparable. Any injury or other harm is not irreparable

for Rule 65 purposes if an adequate alternate remedy in the form of money damages is

available. 11A C. Wright, A. Miller, M. Kane, Federal Practice and Procedure: Civil 2d

§ 2948 at pp. 149-50 and cases cited at n. 4 (West 1995). "Speculative injury is not

sufficient," and only "a strong threat of irreparable injury before trial" will serve as an

adequate basis for preliminary injunctive relief. Id. at pp. 153-56 (emphasis added).  The particular incidents upon which plaintiff bases his request for preliminary relief pose no strong, non-speculative threat of serious injury that could not adequately be compensated by monetary damages in a separate lawsuit. The second factor also weighs against granting plaintiff's motion.

Finally, the third and fourth factors – (a) balancing of the threatened injury against any damage it might cause to defendants and (b) the public interest – are related in this instance.  The Jackson officials against whom the requested court order would have to be entered are not defendants in this case.  Such an order would constitute this court's unwarranted interference with the administration of prison functions in a way that would disserve the public interest and violate personal jurisdiction strictures.  In addition, when a state statute vests state officials with broad discretionary authority concerning the placement of prisoners in a particular status or facility and in the transfer of prisoners from one prison to another, the Constitution affords the prisoners no constitutionally protected interests that might outweigh defendants' or the public interests in prison administration. See Olim v. Wakinekona, 461 U.S. 238, 249-50 (1983)(Hawaii prison regulations vesting prison administrators with broad discretion concerning inmate placement and transfers create no liberty interest protected under the Due Process Clause); Merit v. Lynn, 848 F. Supp. 1266, 1267-68 (W.D. La. 1994) (Louisiana parole statute is broadly discretionary and creates no constitutionally protected liberty interest).

Under these circumstances, Patterson has not established the four factors necessary to obtain a restraining order or other preliminary injunctive relief concerning his incarceration in the Jackson facility. On balance, all four factors weigh in favor of denying his motion for injunctive relief.

## **RECOMMENDATION**

For all of the foregoing reasons, **IT IS RECOMMENDED** that all of defendants' motions, Record Doc. Nos. 20, 33, 45 and 47, be **GRANTED** and that plaintiff's motion for injunctive relief, Record Doc. No. 49, be **DENIED**.

**IT IS FURTHER RECOMMENDED** that plaintiff's complaint be **DISMISSED WITH PREJUDICE** as legally frivolous and/or for failure to state a claim under 28 U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c)(1), or under Heck.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. Douglass v.

United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28 U.S.C. § 636(b)(1)).[2]

New Orleans, Louisiana, this _____22nd_____ day of March, 2013.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

---

[2]Douglass referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.